McKEE v. BERNHEIM.

(Supreme Court, Appellate Division, First Department. February 5, 1909.)

**1. PLEADING (§ 376*)—ADMISSION—EFFECT.**

In an action for the conversion of stock, admissions in the answer that the stock was owned by plaintiff's alleged assignee, and was thereafter transferred to defendant, conclusively established those facts for the purpose of the action.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 1225; Dec. Dig. § 376.*]

**2. CORPORATIONS (§ 118*)—STOCK—SALE—COMPLETED CONTRACT.**

Where the owner of stock accepted plaintiff's offer to buy it, and directed the pledgee of the stock to deliver it to plaintiff upon payment of a debt secured by it, and the owner thereafter formally assigned the stock to plaintiff, there was a completed sale of the stock, though the pledgee refused to deliver it.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 497; Dec. Dig. § 118.*]

**3. SALES (§ 228*)—SUBSEQUENT PURCHASER FROM SELLER.**

Where a sale has been completely executed, except delivery, a subsequent sale by the seller passes no title.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 647; Dec. Dig. § 228 *]

**4. CORPORATIONS (§ 123*)—PLEDGE OF STOCK—CONVERSION BY PLEDGEE.**

Where the owner of pledged stock sold it to plaintiff upon condition that he pay the debt it was pledged to secure, if the pledgee refused to surrender the stock upon tender of the amount of the debt, plaintiff could bring an action for its conversion.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 123.*]

**5. CORPORATIONS (§ 123*)—STOCK—PLEDGE—CONVERSION.**

Defendant purchased 7,550 shares of stock for $22,500, and shortly thereafter sold to another 3,000 shares of the stock for $22,500 secured by a pledge of the stock and the purchaser's note, and on the day defendant purchased the stock he, plaintiff, and others executed an agreement, providing that the above transaction was made by defendant as agent for the others, and that they should participate therein in certain proportions as to payments, profits, and losses, expenses of the transaction, and delivery of the 3,000 shares sold, and plaintiff and the others guaranteed to defendant the payment of the note given for the 3,000 shares, and agreed to leave the remaining 4,550 shares with him until that time, when defendant, after he had been reimbursed for his expenses, should divide the remaining 4,550 shares between them. *Held* that, while plaintiff, defendant, and the others were copartners in the transaction, the 3,000 shares sold did not constitute a part of the partnership assets, and hence plaintiff could purchase such shares from the purchaser and maintain conversion against defendant on his refusal to deliver them upon tender of the secured debt.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 123.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**6. SUBROGATION (§ 31*)—RIGHTS OF GUARANTOR—AS TO CREDITORS.**

  A guarantor of a debt secured by pledged stock of the debtor could pay the debt with the debtor's consent and demand the pledged stock from the creditor.

  [Ed. Note.—For other cases, see Subrogation, Cent. Dig. § 72; Dec. Dig. § 31.*]

Appeal from Trial Term, New York County.

Action by Douglas McKee against Lee S. Bernheim, impleaded with others. From an order setting aside a verdict for plaintiff and dismissing the complaint, and from a judgment of dismissal entered thereon, plaintiff appeals. Order reversed, verdict reinstated, and judgment entered thereon for plaintiff.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Alfred B Cruikshank, for appellant.
Lee G. Rosenblatt, for respondent.

SCOTT, J. The plaintiff, as assignee of one William J. Deboe, sues for damages for the conversion of 3,000 shares of stock of the Giroux Consolidated Mines Company. The complaint alleges that one Isabelle B. Chase, being the owner of 3,000 shares of the capital stock of the Giroux Consolidated Mines Company, on or about the 12th day of May, 1905, obtained a loan from the defendant, Lee S. Bernheim, of the sum of $22,500, and delivered to him as security therefor the aforesaid 3,000 shares of stock, together with her note for $22,500, dated on said day, payable four months after date; that thereafter, and on or about the 17th day of September, 1905, the said Isabelle B. Chase duly transferred to one William J. Deboe the said 3,000 shares of stock, and on or about the 8th day of October, 1906, and before the commencement of this action, the said Deboe duly assigned and transferred the said 3,000 shares of stock and all his right, title, and interest therein, and in the proceeds thereof, and in all claims for damages for the conversion or nondelivery thereof to the plaintiff. It then alleges a tender and demand by Deboe on October 8, 1906, and a subsequent tender and demand by plaintiff on October 9, 1906, and the refusal of said Bernheim to return the stock or any part thereof. The answer specifically admits the ownership of the stock by Mrs. Chase, the loan to her, and the delivery of her note and of the stock as collateral therefor, in the following terms:

"Admits that prior to September 25, 1906, one Isabelle B. Chase was the owner of 3,000 shares of the capital stock of the Giroux Consolidated Mines Company, and that on or about the 12th day of May, 1905, said Isabelle B. Chase obtained from this defendant a loan of $22,500, and delivered to him as security therefor the aforesaid 3,000 shares of the capital stock of the Giroux Consolidated Mines Company, together with her note for $22,500, dated on the 12th day of May, 1905, and payable four months after date."

Thus the ownership of the stock by Isabelle B. Chase and its delivery by her to the defendant, Lee S. Bernheim, as collateral security for her note, are specifically admitted, and, for all the purposes of this action, conclusively established. It appeared from the evidence that

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in September, 1906, through one James Shirley, Mrs. Chase offered to sell the stock to Deboe at the price of $7.50 per share. This offer was communicated by Shirley to Deboe, who accepted it, and Mrs. Chase was notified of such acceptance. She thereupon sent to Deboe a written order on Bernheim, dated September 17, 1906, directing the latter to deliver the stock to Deboe upon payment by him of her note. Subsequently, by a paper dated September 17, 1906, and acknowledged October 10, 1906, Mrs. Chase made a formal assignment of the stock to Deboe. In the meantime Bernheim had been notified by Deboe of his purchase of the stock. Immediately upon receiving this notification, and without replying to it, Bernheim proceeded to Bangor, Me., where Mrs. Chase then was, and, by making certain representations to her, induced her to sign a paper which amounted to a sale of the stock to him in consideration of the cancellation of her note and the return of other collateral held by him.. Thereafter Bernheim claimed to be the owner of the stock, and his subsequent refusals to deliver it up were uniformly based upon this claim of ownership. We think that there can be no doubt that the evidence disclosed a complete and executed sale of the stock to Deboe before Mrs. Chase executed the pretended instrument under which Bernheim claims title. That instrument, therefore, conveyed no title to the stock, because, when it was executed, Mrs. Chase had parted with the stock and no longer owned it.

The tender of the amount due upon the note, the demand for the stock, and the refusal to deliver it are not seriously disputed. Both parties asked for the direction of a verdict, and neither party asked to go to the jury on any question of fact. The pleadings and proofs presented all the facts necessary to establish a cause of action for conversion, and the court accordingly directed a verdict in favor of the plaintiff for a sum which, as it appears to be conceded, represented the damages to which plaintiff is entitled, if he is entitled to recover at all. Thereafter, upon motion, the court set aside the verdict, and dismissed the complaint. The appellant questions the regularity of this practice, but the conclusion at which we have arrived renders it unnecessary to consider that ground of appeal.

The order setting aside the verdict does not state the grounds upon which it proceeded, but it appears from the opinion of the learned trial justice that it was based upon his conclusion that Deboe and Lee S. Bernheim were copartners; that the 3,000 shares of stock owned by Mrs. Chase were a part of the copartnership property, and consequently, since each partner is entitled to the possession of the firm property, and one partner cannot sue his copartner for conversion of the firm property, that Deboe or his assignee cannot maintain this action against Bernheim. This ground of defense is not raised by the answer, but seems to have been suggested by a certain agreement introduced in evidence in the course of the trial. That agreement is dated May 8, 1905, and is executed by J. W. Bernheim, Lee S. Bernheim, W. J. Deboe, and James Shirley. It recites that on May 8, 1905, Lee S. Bernheim bought of George M. Hurd and Mary E. Hurd 7,550 shares of the capital stock of the Giroux Consolidated Mines Company, which stock was held in escrow by the

Colonial Trust Company at Philadelphia, Pa., deliverable on the 6th day of October, 1905; that said Lee S. Bernheim paid for said stock $22,650 cash; that on the 12th day of May, 1905, L. S. Bernheim had sold to Mrs. Isabelle B. Chase 3,000 shares of the capital stock of the Giroux Consolidated Mines Company, and had taken in payment therefor her note for $22,500, dated May 12, 1905, at four months, with written agreements for extension to 18 months; said note being secured by 100 shares of the capital stock of the United Verde Mining Company and 3,000 shares of Giroux Consolidated Mines Company stock. The agreement recited that the subscribers thereto agreed to participate in the above-mentioned transaction in the proportion of three-fifths to J. W. and L. S. Bernheim and two-fifths to W. J. Deboe. The agreement then recited that the foregoing transactions were made by L. S. Bernheim as the agent of the subscribers, and that they are bound in the above-mentioned proportions as regards payments, profits, .or losses, expenses and the delivery to Mrs. Chase of the 3,000 shares of Giroux stock sold to her. The subscribers also guaranteed to said L. S. Bernheim the payment of the note of Mrs. Chase, and agreed until it should be fully paid to leave with the holder thereof the 4,550 shares of stock belonging to said subscribers. L. S. Bernheim agreed on his part that when he had been reimbursed for his outlay with interest and expenses, and the 3,000 shares of stock should have been delivered to Mrs. Chase, he would divide the remainder of the stock, to wit, 4,500 shares, between the subscribers in the proportion designated.

It is apparent from this agreement that Deboe and the two Bernheims were copartners or joint adventurers, but it is equally apparent that the 3,000 shares of stock sold to Mrs. Chase did not constitute, when the agreement was executed, a part of the copartnership assets. These assets consisted of Mrs. Chase's note and the 4,550 shares remaining after the sale to her. Throughout the whole agreement it is recited and reiterated that 3,000 of the stock had been sold. What the copartners or joint adventurers agreed to do was to make L. S. Bernheim good for his expenditures and expenses, and then to divide the 4,550 shares of stock between themselves. If Mrs. Chase's note was paid L. S. Bernheim would be practically made whole because the price at which the 3,000 shares were sold to Mrs. Chase fell short by only $150 of what Bernheim had paid for the 7,550 shares. When the subscribers, including Deboe, guaranteed the payment of Mrs. Chase's note, this was but one method of securing L. S. Bernheim for $22,500 of the amount he had paid out. Being a guarantor of the debt, it was competent for Deboe, with the consent of the debtor, to pay it, and take up the collateral given to secure its payment. This was no violation of any duty he owed to his copartners. On the contrary, it was exactly in accordance with his agreement with them. The stock deposited as collateral for the payment of the note being thus released, Deboe as the purchaser from Mrs. Chase had the right to demand its delivery to him, and, since the 3,000 shares of the stock constituted no part of the copartnership assets, the rule of law applied by the learned trial justice had no application.

It follows that the order appealed from must be reversed, the verdict reinstated, and judgment entered therein in favor of the plaintiff, with costs in this court and the court below. All concur.